IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| DAVID BELL, NORA ADKINS, LARRY BECKMAN, HARRY BILDERBACK, BRETT BOWER, JOHN KNAPP, ERIC ROUSE, SHELLEY RUIZ, JIMMY STRINGER, CRAIG WILLIAMS and KENNY WILLIAMS<br><br>    Plaintiffs<br><br>v.<br><br>EXPRESS COURIER INTERNATIONAL, INC., and EMP LSO HOLDING CORPORATION<br><br>    Defendants | Case No.   5:18-cv-11-TBR<br><br>*Electronically filed* |

## COMPLAINT

Come now Plaintiffs David Bell, Nora Adkins, Larry Beckman, Harry Bilderback, Brett Bower, John Knapp, Eric Rouse, Shelley Ruiz, Jimmy Stringer, Craig Williams and Kenny Williams, by counsel, and for their Complaint against Defendants, Express Courier International, Inc., and EMP LSO Holding Corporation (collectively Defendant throughout this Complaint) state as follows:

### INTRODUCTION

1.    Plaintiffs bring this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the Kentucky Wage Payment Statute, KRS 337, *et seq.* for declaratory judgment, monetary damages, liquidated damages, prejudgment

interest, and attorney fees and costs, as a result of Defendant's failure to pay Plaintiffs minimum and overtime wages as required by law.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because it raises federal questions under the FLSA.

3. Defendant conducts business within the State of Kentucky, providing courier/delivery services within the State of Kentucky.

4. Defendants committed a substantial portion of the acts complained of in this District, therefore venue is proper pursuant to 28 U.S.C. § 1391.

5. Plaintiffs' claims under the Kentucky Wage Payment Statute, KRS § 337, *et seq*. form part of the same case, and rely on the same facts, as the FLSA claims alleged in this complaint.

6. Therefore, this Court has supplemental jurisdiction over Plaintiffs' KRS § 337 claims pursuant to 28 U.S.C. § 1367(a).

## PARTIES

7. Plaintiff David Bell is an individual and resident of the State of Kentucky.

8. Plaintiff Nora Adkins is an individual and resident of the State of Kentucky.

9. Plaintiff Larry Beckman is an individual and resident of the State of Illinois.

10. Plaintiff Harry Bilderback is an individual and resident of the State of Kentucky.

11. Plaintiff Brett Bower is an individual and resident of the State of California.

12. Plaintiff John Knapp is an individual and resident of the State of Michigan.

13. Plaintiff Eric Rouse is an individual and resident of the State of Kentucky.

14. Plaintiff Shelley Ruiz is an individual and resident of the State of Kentucky.

15. Plaintiff Jimmy Stringer is an individual and resident of the State of Kentucky.

16. Plaintiff Craig Williams is an individual and resident of the State of Kentucky.

17. Plaintiff Kenny Williams is an individual and resident of the State of Kentucky.

18. At all times relevant to this Complaint, each Plaintiff performed courier services for Defendant within the State of Kentucky.

19. Defendant Express Courier International, Inc. ("Express Courier"), is a foreign, for-profit corporation, registered to conduct business within the State of Kentucky.

20. Defendant EMP LSO Holding Corporation ("EMP LSO") is a foreign, for-profit corporation, whose principal place of business is 3060 Peachtree Road NW, Suite 360, Atlanta, Georgia 30305.

21. Defendant's primary business purpose is to provide on-demand and scheduled courier/delivery services. Defendants engage couriers/drivers to accomplish this goal.

22. Courier/delivery services are at least one integral part of Defendants' business.

23. Defendant's annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

24. Defendant employs at least two individuals that handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce, including, but not limited to, medical supplies and bio-materials, office supplies, auto parts, manufactured goods, or office equipment for the benefit of Defendant.

**FACTS**

25. To carry out Defendant's courier/delivery services, Defendant contracted with couriers/drivers during the relevant time.

26. Each Plaintiff performed the duties of a courier, including transporting and delivering packages to Defendant's customers during the relevant time.

27. To support its delivery business, Defendant maintained a hierarchy of corporate level employees to oversee numerous field branches located throughout the southeastern United States and divided into regions.

28. At the corporate level, Defendant maintained an operations department, a compliance department, an accounting department, a marketing department, an information-technology department, and an insurance department.

29. Defendant's compliance department was responsible for determining the requirements to conduct Defendant's courier services in compliance with applicable laws and communicating those requirements to Defendant's branches.

30. The compliance department was responsible for preparation, maintenance and use of Defendant's standard courier agreement.

31. Defendant's compliance department was also responsible for processing all driver applications and vetting applicants for minimum requirements.

32. Defendant's corporate office employed a Director of Business Analytics whose job was to help the branch run more efficiently or perform research to improve business operations.

33. Defendant also employed a Director of Operations to support branches and sales by mining data and running reports for the company with a goal of maximizing profit.

34. Defendant also maintained a corporate-level dispatch office, staffed by "Central Ops Specialists," whose monitored customer requirements and ensured customer expectations were met.

35. Each branch had a senior employee in charge of the branch and drivers.

36. Branch Managers ensured that Plaintiffs were operating under applicable company, federal and state rules, regulations and operating procedures.

37. Branch Managers also ensured that customers received on-time, quality delivery service.

38. Branch Managers reported customer satisfaction to Defendant's corporate office.

39. Defendant required Branch Managers to: ensure drivers delivered packages on time, ensure customer satisfaction, recruit new customers and sell additional services.

40. Branch Managers or another individual assigned responsibility for the facility were authorized to terminate Plaintiff's employment.

41. Branch Managers were also responsible for meeting Corporate Office budget guidelines and operating within the parameters set by the Regional Director.

42. Branch Managers were also responsible for maintaining a positive and safe working environment for individuals working at the branch, including drivers.

43. Branch Managers assigned drivers delivery routes.

44. Branch Managers were responsible for setting long and short-term business objectives.

45. Defendant treated each Plaintiff as an independent contractor for purposes of the FLSA.

46. Defendant required each and every potential courier to enter into a standard agreement, which Defendant called an "independent contractor agreement" or "owner-operator agreement."

47. No Plaintiffs were involved in drafting the terms of Defendant's standard agreement.

48. Defendant required each driver to satisfy Defendant's customers' needs and requirements.

49. All drivers were hired to work for Defendant for an indefinite period of time.

50. Defendant expected each Plaintiff to wear a photo identification badge.

51. Defendant expected each Plaintiff to follow Defendant's dress code and guidelines.

52. Defendant expected drivers to follow Defendant's policies regarding delivery tracking.

53. Defendant leased warehouses in which drivers picked up packages for delivery.

54. No drivers shared in Defendant's profits or losses.

55. Defendant entered into contracts with their customers, and no drivers signed contracts with Defendant's customers.

56. Defendant set prices to its customers for certain types of packages or delivery routes without driver input or negotiation.

57. Drivers did not negotiate contracts or prices with Defendant's customers.

58. Defendant determined where to locate Defendant's branches and offices without driver input.

59. Defendant made decisions on advertising Defendant's business without driver input.

60. Plaintiffs did not advertise themselves as independent businesses.

61. Defendant made decisions on what new business to pursue or accept without driver input.

62. Defendant's standard agreement required drivers to obtain and maintain certain types of insurance.

63. Defendant's standard agreement required drivers to use communication equipment that was compatible with Defendant's operating system.

64. Defendant's standard agreement gave Defendant the sole discretion to investigate, adjudicate and charge drivers for delays, shortages, mis-deliveries, and claims related to lost, damaged or contaminated loads.

65. Defendant's standard agreement required drivers to obtain written consent from Defendant before operating their vehicles for another motor carrier.

66. Customer complaints about a driver were directed to the branch or corporate office, not the driver.

67. Defendant paid drivers through a combination of piece rates, route rates or delivery rates.

68. Defendant generally did not pay any drivers any overtime premium for hours that they worked over forty hours per week.

69. If any driver worked more than forty hours per week, Defendant's policy was not to pay that driver an overtime premium of one and one half times the driver's regular rate for the hours over forty.

70. Defendant had a general practice of not maintaining contemporaneous records of time that drivers performed courier/delivery services on Defendant's behalf.

71. After deducting expenses related to the operation of at least some Plaintiffs' vehicles in the course of performing job duties for Defendant, some Plaintiffs' pay regularly fell below the minimum wages required by the FLSA.

72. Defendant knew or should have known that the job duties of Plaintiffs required Plaintiffs to work hours in excess of forty per week, yet Defendant failed and refused to compensate Plaintiffs for their work as required by the FLSA and KRS § 337, *et seq*.

73. At all times relevant hereto, Defendant was aware of the minimum wage and overtime requirements of the FLSA and KRS § 337, *et seq*.

74. Defendant purposefully and knowingly classified drivers as "independent contractors."

## CLAIM ONE
### (FLSA Violations)

75. Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if fully set forth in this section.

76. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to forty (40) in one week and to pay one and one-half times regular wages for all hours worked over forty (40) hours in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

77. Defendant misclassified Plaintiffs as independent contractors.

78. The costs that Plaintiffs incurred, including, but not limited to, use of their own vehicles, for the benefit of Defendant, caused some Plaintiffs' free and clear pay to fall below minimum wages.

79. Defendant also unlawfully failed to pay Plaintiffs an overtime premium for hours over forty per week.

80. Defendant's failure to pay each Plaintiff all minimum and overtime wages owed and failure to reimburse Plaintiff's work-related vehicle expenses was willful.

81. By reason of the unlawful acts alleged herein, Defendant is liable to each Plaintiff for monetary damages, liquidated damages, and costs, including

reasonable attorney's fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## CLAIM TWO
### (KRS § 337, *et seq.*)

82. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

83. Plaintiffs assert this claim for damages and declaratory relief pursuant to the Kentucky Wage Payment Statute, KRS § 337, *et seq*.

84. Defendant misclassified all drivers as independent contractors.

85. The costs that some Plaintiffs incurred, including, but not limited to, use of their own vehicles, for the benefit of Defendant, caused some Plaintiffs' free and clear pay to fall below minimum wages.

86. Defendant also unlawfully refrained from paying Plaintiffs an overtime premium for hours over forty per week.

87. By reason of the unlawful acts alleged herein, Defendant is liable to each Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorney's fees, for all violations that occurred within the five years prior to the filing of this Complaint.

## REQUEST FOR RELIEF

Plaintiffs David Bell, Nora Adkins, Larry Beckman, Harry Bilderback, Brett Bower, John Knapp, Eric Rouse, Shelley Ruiz, Jimmy Stringer, Craig Williams and Kenny Williams, respectfully ask this Court to award declaratory relief and damages as follows:

A. That each Defendant be required to account to Plaintiffs and the Court for all of the hours worked by Plaintiffs and all monies paid to them;

B. A declaratory judgment that Defendant's practices alleged herein violate the FLSA, KRS § 337, *et seq*., and attendant regulations;

C. Judgment for damages for all unpaid minimum wages and overtime compensation under the FLSA, KRS § 337, *et seq*., and attendant regulations;

D. Judgment for liquidated damages pursuant to the same laws in an amount equal to all unpaid minimum wages and overtime compensation owed to Plaintiffs during the applicable statutory periods;

E. An order directing Defendant to pay Plaintiffs prejudgment interest, reasonable attorney's fees and all costs connected with this action;

F. A trial by jury; and

G. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

CRAIG HENRY PLC

/s/ Michele Henry
Michele Henry
239 South Fifth Street
Suite 1400
Louisville, KY 40202
Telephone: (502) 614-5962
Facsimile: (502) 614-5968
mhenry@craighenrylaw.com

*and*

SANFORD LAW FIRM, PLLC

/s/ Joshua West
Joshua West
One Financial Center
650 South Shackleford, Suite 411
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040
west@sanfordlawfirm.com

Pro hac vice motion forthcoming

*Counsel for Plaintiffs*